Filed 9/16/21  P. v. Ditommaso CA4/2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075736 |
| v. | (Super.Ct.No. FWV024365) |
| KARL JOSEPH DITOMMASO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Ingrid Adamson Uhler, Judge.  Reversed with directions.

Lizabeth Weis, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Daniel Rogers and Lise S. Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant, Karl Joseph Ditommaso, filed a petition to vacate his conviction and sentence pursuant to Penal Code section 1170.95,[1] which the trial court denied. On appeal, defendant contends the court erred in summarily denying his petition. We reverse and remand the matter for reconsideration.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

Defendant's wife had an affair with the victim. On April 11, 1992, defendant asked his stepsister to arrange a meeting with the victim. On the morning of April 13, defendant told his stepsister to pick up his friend, Scott Harrison, from the train station. Defendant told his stepsister that Harrison would be meeting with the victim instead of him.

At the time of the arranged meeting, Harrison waited for the victim with defendant's stepsister; he told her he was going to scare the victim into leaving defendant's wife alone. Harrison told the stepsister to ask the victim for help with her car. As the victim began to help her, Harrison jumped out of the trees with a gun in his hand. He confronted the victim, put a piece of duct tape over his mouth, and placed him in the back seat of the victim's car. Harrison ordered the stepsister to drive the victim's car. While in the car, Harrison fatally shot the victim.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] We derive much of our factual recitation from the opinion from defendant's appeal of the judgment. (*People v. Ditommaso* (E032315, June 8, 2004) [nonpub. opn.].)

The next morning, the stepsister asked defendant why he did not tell her what was going to happen.  Defendant responded that he knew she would not have helped if she had known the truth.  Harrison then approached defendant, and the two then shook hands, smiled, and smoked cigars.

Defendant and Harrison asked the stepsister's husband for help moving the victim's body from the back seat of the victim's car into the trunk, but he declined to help.  Harrison then drove the victim's car, with the victim's body, to Mexico.  Defendant followed in his vehicle.  Together, they wiped the victim's car with a towel and removed the license plates.  They returned to the United States in defendant's vehicle.  Two days later, a Mexican police officer discovered the victim's car and body in Tijuana.  The victim's case was closed in 1993.

The victim's case was reopened in 2001.  Sheriff's deputies subsequently arrested defendant and advised him of his *Miranda*[3] rights.  After defendant waived his rights, he admitted that he knew that his wife and the victim were having an affair.  Defendant admitted that he wanted Harrison to scare the victim by slapping him around.  Defendant said he never wanted the victim to be hurt, he did not participate in or direct the victim's death, he did not mastermind the encounter, and he was at home with his wife's daughter at the time of the encounter.

---

[3] *Miranda v. Arizona* (1966) 384 U.S. 436.

Defendant admitted that he knew Harrison was a violent person and always carried a gun, but defendant claimed that he never intended for anyone to get hurt, and he never ordered Harrison to kill the victim.  Defendant stated that the day after the murder, he saw the victim's body in the back seat of the victim's car, which was parked in the garage of his stepsister's former condominium.  Harrison told defendant that he shot the victim and threatened that he would hurt defendant and his wife's daughter if defendant did not "go along with everything."  Defendant admitted that he followed Harrison to Mexico to drop off the victim's car and body.

On January 30, 2002, the People charged defendant by information with murder (§ 187, subd. (a), count 1) and alleged defendant knew that during the commission of the offense, a principal was armed with a firearm (§ 12022, subd. (d)).  The People additionally alleged as special circumstance allegations that defendant intentionally killed the victim by means of lying in wait (§ 190.2, subd. (a)(15)) and, while committing the murder, defendant was engaged in the crime of kidnapping (§ 190.2, subd. (a)(17)).  The court later dismissed the lying-in-wait special circumstance.

The jury found defendant guilty of the lesser included offense of second degree murder.  The court granted the prosecution's motion to dismiss the arming allegation after the jury failed to render any finding on it.[4]  On September 4, 2002, the court sentenced defendant to prison for 15 years to life.

---

[4] Nothing in this record reflects what happened to the kidnapping-murder special circumstance allegation.  (§ 190.2, subd. (a)(17).)

4

On June 1, 2020, defendant filed a petition to vacate his conviction and sentence pursuant to section 1170.95.  Defendant alleged he had been convicted of murder pursuant to the felony-murder rule or natural and probable consequences theory, was not the actual killer, did not intend to kill, was not a major participant acting with reckless disregard to human life, and requested appointment of counsel.

The People filed an opposition to the petition on August 27, 2020, alleging defendant had failed to make a prima facie showing because he was not convicted under a felony-murder theory.  The People further argued defendant was ineligible for relief because he was a major participant, acting with reckless indifference to human life.  The People attached to their petition a copy of this court's opinion from defendant's appeal of the judgment.

Without appointing counsel for defendant and without holding a hearing, the trial court denied the petition.  The court noted that the jury had not been instructed on the

felony-murder rule or the natural and probable consequences theory;[5] thus, the court ruled defendant was not entitled to relief pursuant to section 1170.95.

## II.  DISCUSSION

Defendant contends the court erred in summarily denying his petition because it failed to appoint him counsel after he filed a facially valid petition.  We agree.

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 [(2017-2018 Reg. Sess.)] 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats 2018, ch. 1015, § 1, subd. (f).)  In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provides a

---

[5] The jury instructions are not part of the record on appeal.  However, the opinion appears to contradict the trial court's conclusion about the instructions to the jury:  "In this case, it was uncontradicted that Harrison, not defendant, shot the victim.  Therefore, defendant's liability for second degree murder was necessarily based on an aiding and abetting theory.  Aiding and abetting requires that the defendant 'by act or advice, aids, promotes, encourages or instigates[] the commission of the crime.'  '[A] person who aids and abets a confederate in the commission of a criminal act is liable not only for the crime (the target crime), but also for any other offense (nontarget crime) committed by the confederate as a 'natural and probable consequence' of the crime originally aided and abetted.'"  (*People v. Ditommaso*, *supra*, E032315, fn. omitted.)  "[T]he trial court specifically instructed the jury that kidnap felony murder under a conspiracy or aiding and abetting theory was murder in the first degree."  (*Ibid.*)  "[T]here was also substantial evidence to support defendant's conviction for second degree murder based on the implied malice, under the natural and probable consequences doctrine."  (*Ibid.*)  "Defendant may properly be convicted of second degree murder under the natural and probable consequence doctrine so long as the evidence shows the direct perpetrator acted with malice."  (*Ibid.*)

procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

"Pursuant to section 1170.95, an offender must file a petition in the sentencing court averring that: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' [Citations.] Additionally, the petition shall state '[w]hether the petitioner requests the appointment of counsel.' (§ 1170.95, subd. (b)(1)(C).) If a petition fails to comply with subdivision (b)(1), 'the court may deny the petition without prejudice to the filing of another petition.'" (*Lewis*, *supra*, 11 Cal.5th at pp. 959-960.)

"[P]etitioners are entitled to the appointment of counsel upon the filing of a facially sufficient petition . . . ." (*Lewis*, *supra*, 11 Cal.5th at p. 957.) "[O]nly *after* the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.'" (*Ibid*.)

Here, defendant filed a facially valid petition. He alleged he had been convicted of murder pursuant to the felony-murder rule or natural and probable consequences theory, was not the actual killer, did not intend to kill, was not a major participant acting with reckless disregard to human life, and requested appointment of counsel. Thus, the superior court should have appointed counsel for defendant and allowed the filing of a reply to the People's opposition prior to considering the record of conviction and proceeding to a prima facie determination of defendant's petition. Thus, the trial court erred in summarily denying defendant's petition.

Defendant contends the trial court's error was not harmless because the jury's conviction of defendant for murder could have been based upon the natural and probable consequences theory. We agree.

The deprivation of a defendant's right to counsel upon the filing of a facially valid petition is tested for prejudice under *People v. Watson* (1956) 46 Cal.2d 818. (*Lewis*, *supra*, 11 Cal.5th at pp. 957-958.) "[A] petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing."'" (*Id*. at p. 974.)

"The record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) "While the trial court may look at the record of conviction after the appointment of counsel to

determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited.  Like the analogous prima facie inquiry in habeas corpus proceedings, '"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause."' [Citation.]  '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.]  'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Ibid.*)

"Appellate opinions . . . are generally considered to be part of the record of conviction.  [Citation]  However . . . the probative value of an appellate opinion is case-specific, and 'it is certainly correct that an appellate opinion might not supply all answers.' [Citation.]  In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis*, *supra*, 11 Cal.5th at p. 972.) "[T]he 'prima facie bar was intentionally and correctly set very low.'" (*Ibid.*)

We cannot say that it is reasonably probable that had defendant been afforded assistance of counsel that his petition would, nonetheless, have been summarily denied without an evidentiary hearing.  Here, as noted in footnote No. 5, *ante*, it appears that contrary to the trial court's conclusion, the jury was instructed with the natural and

9

probable consequences doctrine.  Indeed, although this court held that "there was substantial evidence to support defendant's second degree murder conviction based on express malice," this court also held "there was also substantial evidence to support defendant's conviction for second degree murder based on the implied malice, under the natural and probable consequences doctrine."  (*People v. Ditommaso*, *supra*, E032315.) Determining under which theory the jury found defendant guilty would constitute quintessentially prohibited "'factfinding involving the weighing of evidence or the exercise of discretion.'"  (*Lewis*, *supra*, 11 Cal.5th at p. 972.)

Nonetheless, it is also possible that the trial court was looking at the actual jury instructions when it stated:  "The jury was never instructed on second-degree murder based upon the felony-murder rule or natural and probable consequences doctrine."  If so, this would make defendant prima facie ineligible for relief.  (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, review granted Sept. 23, 2020, S263939 [Where the jury was not instructed on felony-murder or the natural and probable consequences theories, "the jury necessarily found [the defendant] culpable for murder based on his own actions and mental state as a direct aider and abettor," and, therefore, the defendant was ineligible for section 1170.95 relief as a matter of law.]; *People v. Smith* (2020) 49 Cal.App.5th 85, 92, fn. 5, review granted July 22, 2020, S262835 ["[I]f the jury was not instructed on a natural and probable consequences or felony-murder theory of liability, the petitioner could not demonstrate eligibility as a matter of law because relief is restricted to persons convicted under one of those two theories."]; *People v. Cornelius* (2020) 44 Cal.App.5th

10

54, 58, review granted Mar. 18, 2020, S260410 [The defendant "was ineligible for relief because he was not convicted of felony murder or murder as an aider or abettor under a natural consequences theory."].)

Similarly, if the record reflected that the jury had rendered a true finding on the kidnapping-murder special circumstance, this would likewise render defendant ineligible for relief because it would reflect the jury's determination that defendant intended to kill the victim. (*People v. Verdugo* (2020) 44 Cal.App.5th 320*, 328,* review granted Mar. 18, 2020, S260493; *People v. Murillo* (2020) 54 Cal.App.5th 160, 167, review granted Nov. 18, 2020, S264978 [true finding on burglary-murder special circumstance rendered defendant ineligible for § 1170.95 relief]; accord, *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1137, 1140-1141, review granted Oct. 14, 2020, S264284 [any murder special circumstance finding under § 190.2, subd. (a)(17), renders a defendant ineligible for § 1170.95 relief as a matter of law]; *People v. Jones* (2020) 56 Cal.App.5th 474, 482, review granted Jan. 27, 2021, S265854 ["A defendant with a special circumstance finding under section 190.2, subdivision (d) is not eligible for relief under section 1170.95 as a matter of law."]; cf. *People v. Gomez* (2020) 52 Cal.App.5th 1, 15, review granted Oct. 14, 2020, S264033 [the jury's true findings on robbery and kidnapping special circumstance allegations rendered defendant ineligible for § 1170.95 relief as a matter of law]; contra, *People v. Torres* (2020) 46 Cal.App.5th 1168, 1173, review granted June 24, 2020, S262011 [trial court's exclusive use of jury's special circumstance findings alone was not sufficient to preclude § 1170.95]; accord, *People v. Smith* (2020) 49 Cal.App.5th

85, 94, review granted July 22, 2020, S262835; *People v. York* (2020) 54 Cal.App.5th 250, 258, review granted Nov. 18, 2020, S264954; *People v. Secrease* (2021) 63 Cal.App.5th 231, 254, review granted June 30, 2021, S268862.)

Thus, we shall remand the matter so the trial court can appoint counsel, permit the filing of a reply brief, and hold a hearing on whether defendant can make a prima facie showing of eligibility. If, after reviewing the record and hearing from counsel, the trial court finds defendant has failed to make a prima facie showing, it shall again summarily deny the petition.

"If the trial court determines that a prima facie showing for relief has been made, the trial court [shall] issue[] an order to show cause, and then . . . hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' [Citation.] 'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' [Citation.] At the hearing stage, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.'" (*Lewis*, *supra*, 11 Cal.5th at p. 960.)

## III. DISPOSITION

The order denying defendant's petition is reversed.  The matter is remanded to the trial court with directions to appoint counsel for defendant, allow the filing of a reply to the People's opposition, and hold a hearing to determine whether defendant can make a prima facie showing of relief.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:

RAMIREZ
P. J.

FIELDS
J.

13